IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.:_____

| | | |
|---|---|---|
| BRIAN K. MORRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | COMPLAINT FOR AGE DISCRIMINATION, |
| | ) | DISABILITY DISCRIMINATION AND |
| | ) | WRONGFUL DISCHARGE |
| CAROLINA BEVERAGE | ) | |
| GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOW COMES** Plaintiff, complaining of Defendant and alleges as follows:

## JURISDICTION AND VENUE

1. This action is brought to remedy employment discrimination on the basis of disability and age against Plaintiff. Plaintiff's Complaint is brought under The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 and § 12117 as amended, ADA Amendments Act of 2008, The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, as amended, which incorporates by reference § 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) and North Carolina law.

2. Plaintiff seeks monetary relief, compensatory damages, and punitive damages pursuant to ADA, ADEA and North Carolina law.

3. On September 24, 2019, the EEOC issued Notice of Right to Sue to Plaintiff. (Attached as Exhibit 1)

1

Case 5:19-cv-00149-KDB-DCK   Document 1   Filed 11/13/19   Page 1 of 13

4. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") designated as EEOC Charge No. 430-2018-2137. (Attached as Exhibit 2)

5. Plaintiff has exhausted his administrative remedies.

6. At all times relevant to this Complaint, Plaintiff worked for Defendant in Iredell County, North Carolina.

7. The unlawful employment practices complained of herein occurred within Iredell County, North Carolina.

8. The jurisdiction of this court is invoked pursuant to 38 U.S.C. §4323(b)(3), 29 U.S.C. § 626(c), 28 U.S.C. §1367, and 28 U.S.C. 1343(a)(4).

9. This court should assume supplemental jurisdiction of Plaintiff's state law claims for wrongful discharge under 28 U.S.C. §1367(a) because these claims are based upon the same operative facts as the discrimination claims over which the court has jurisdiction, and judicial economy, convenience, and fairness to the parties demand that the court assume and exercise jurisdiction over all claims alleged herein.

10. The venue of this court over this controversy is based upon the following:

   a. The unlawful employment practices alleged herein were committed in the Western District of North Carolina. Accordingly, venue lies in the United States District Court for the Western District of North Carolina under 28 U.S.C. § 1391(b): and,

   b. Plaintiff avers that Defendant is a corporation doing business in this judicial district within the meaning of 28 U.S.C. § 1391(c).

2

**PARTIES**

11. Plaintiff is a citizen and resident of Iredell County, North Carolina.

12. Defendant is a North Carolina corporation licensed to do and doing business in the State of North Carolina and doing business as Carolina Beverage Group or Carolina Beverage.

13. Defendant is a wholly owned subsidiary of Portfolio Company Brynwood Partners VII L.P. and Brynwood Partners VIII L.P. ("Brynwood") through Cold Spring Brewing Company's acquisition of Defendant on or about May, 2018.

14. At all times relevant to this Complaint, Defendant employed 500 or more employees for each working day in each of the 20 or more calendar weeks in the current or preceding calendar year.

15. Defendant is engaged in an industry affecting commerce and is an employer within the meaning of § 11(b) of ADEA, 29 U.S.C. §630(b).

16. At all times relevant to this Complaint, the following people were employed by Defendant and acted within the course and scope of their employment and as agents of Defendant for all of the acts alleged herein:

    A. Max Bacon (hereinafter "Bacon"), Maintenance Supervisor.

    B. Brian Just (hereinafter "Just"), Supervisor.

    C. Penny Yountz (hereinafter "Yountz"), HR Director.

    D. John Stritch (hereinafter "Stritch"), Supervisor.

    E. Ken Cook (hereinafter "Cook"), Supervisor.

    F. Tammy Deweese (hereinafter "Deweese"), Lead Parts Room Administrator.

    G. Niki Gawalik (hereinafter "Gawlik"), HR Manager.

    H. Shannon Hilton (hereinafter "Hilton"), Director.

3

## STATEMENT OF FACTS

17. Plaintiff was an employee of Defendant and hired by Stritch on or about June 4, 2007, as a Truck Driver.

18. In 2017, Plaintiff was promoted to Lead Parts Room Administrator.

19. Plaintiff was born on September 5, 1957 and is presently 62 years of age.

20. Plaintiff was terminated on or about March 7, 2018.

21. Plaintiff always received excellent or above average performance reviews in excess of 10 years.

22. In August 2017, Plaintiff was diagnosed with degenerative disc disease.

23. Plaintiff's physician instructed that Plaintiff not work in August 2017, due to the disabling medical condition, and provided Defendant a physician's work release through October 30, 2017.

24. After October 30, 2017, Plaintiff was able to return to work with no physical restrictions.

25. On or about August 2017, Defendant hired Tammy Deweese to replace Plaintiff with the same job title and job duties as Plaintiff.

26. Deweese was trained by Ken Cook, Plaintiff's previous supervisor.

27. When Plaintiff returned to work on October 31, 2017, he was not allowed to resume his normal job duties and job functions such as ordering parts or his other "desk job" duties.

28. Two thirds of Plaintiff's previous job duties consisted of ordering parts which was now being conducted by Deweese.

29. Plaintiff was relegated to unloading trucks, counting inventory, putting parts into stock, forklift operation and helping mechanics locate parts, and other non 'desk job" duties and manual labor tasks.

4

30. Plaintiff was released by his physicians on October 30, 2017 without any work restrictions.

31. On or about November 1, 2017, Plaintiff had a discussion with Max Bacon, Maintenance Supervisor.

32. Bacon stated that they had been discussing Plaintiff and had thought Plaintiff would probably not be able to come back to work and do the same job Plaintiff was doing before because of Plaintiff's neck surgery and medical condition.

33. Plaintiff explained that he had no physical restrictions and requested that he resume his job duties as Lead Parts Room Administrator that Plaintiff was doing before becoming disabled in August of 2017.

34. Defendant did not allow Plaintiff to resume his previous job duties and job function as a Lead Parts Room Administrator and Deweese continued to perform those job functions.

35. On or about February 12, 2018 Bacon stated to Plaintiff that he had nothing to worry about with regard to Plaintiff's job safety and that Bacon was working with Yountz to move Plaintiff to another position.

36. When Plaintiff inquired to Yountz at a later date, she did not know what Plaintiff was talking about.

37. Yountz never had any discussions with Bacon about another job placement for Plaintiff.

38. When Plaintiff spoke with Bacon, Bacon stated: No, No, No, we would never let you lose your job. You have been here over 10 years.

39. In March 2018, Plaintiff was called into a meeting with Yountz, HR Director and Brian Just, Plaintiff's Supervisor in order to inform Plaintiff that he was being released from employment and terminated.

5

40. Plaintiff was given no further options other than release and termination with regard to his employment at Defendant.

41. Plaintiff was told by Yountz that his position had been eliminated.

42. No other employee of Defendant was affected by Defendant's alleged "position elimination" or reduction-in-force (RIF).

43. Defendant prepared no written Separation Program nor ADEA Disclosure Statement pursuant to the ADEA or the Older Workers Benefit Protection Act (OWBPA).

44. Defendant had mischaracterized Plaintiff's termination as an RIF when in fact Plaintiff's job duties were not eliminated but assigned to Deweese who acquired Plaintiff's identical job title of Lead Parts Room Administrator. .

45. Defendant is unable to avoid liability by mislabeling its sole stated illegitimate reason for Plaintiff's termination.

46. Deweese has performed the job duties and job functions which Plaintiff used to perform since her hire in August 2017.

47. Deweese is significantly younger than Plaintiff and has no history of a physically disabling medical condition.

48. Plaintiff's position as a Lead Parts Room Administrator had been replaced by another employee who is approximately 20 years younger than Plaintiff and who has not been diagnosed with a disabling medical condition.

49. While employed with Defendant, Plaintiff had always been considered an excellent and productive employee in several different positions with the Defendant company including Parts Room Administrator and Lead Parts Room Administrator and was performing within Defendant's reasonable expectations.

6

50. Plaintiff was discriminated against and terminated because of Plaintiff's history of disability and Defendant's perceived disability of him in violation of ADA and Plaintiff was terminated because of his age (60 years, at the time of his termination) in violation of ADEA.

51. Plaintiff was given no further options other than his release and termination.

52. Other similarly situated employees without a disabling condition or history of such and who were substantially younger were treated more favorably than Plaintiff as set forth herein and to be determined.

53. Based on direct evidence and the extremely tight nexus of events, Plaintiff was terminated by Defendant because of his age and disabling condition.

54. Defendant offered Plaintiff a proposed Severance Agreement dated 3/7/2018, which included a severance benefit single payment of six weeks of pay.

55. Defendant's normal protocol with regard to employee terminations does not typically include severance packages or written releases.

56. Plaintiff rejected the Defendant's proposal.

57. Plaintiff had an exemplary record with Defendant and Plaintiff always received good performance reviews.

58. Plaintiff suffers from medical conditions and has a physical impairment which causes substantial limitations upon his major life activities including but not limited to standing, sitting, walking, lifting and performing manual tasks, within the meaning of the ADA.

59. As a result of Plaintiff's physical impairment, Plaintiff has substantial limitations upon the major life activities set forth above within the meaning of the ADA.

60. Plaintiff has a history of having a physical impairment which substantially limits his major life activity set forth above.

61. Plaintiff is regarded by others and regarded by the Defendant as having a physical impairment that substantially limits the major life activities set forth herein.

62. Despite his disabilities, Plaintiff is able to perform all of the essential functions of his job with or without reasonable accommodations.

63. Plaintiff is a "qualified individual with a disability" within the meaning of § 101(a) of the Americans with Disability Act, 42 U.S.C. § 1211(a) because of substantial limitations on his major life activities as set forth herein.

64. Plaintiff was "regarded as" having a disability by his employer within the meaning of the ADA.

65. Plaintiff's employment was wrongfully terminated and he was discriminated against based upon his disability and age by the Defendant.

66. While employed with the Defendant, the Plaintiff's job performance had always met or exceeded the Defendant's employment standards and the Plaintiff was adequately performing and meeting all job performance standards of the Defendant as documented.

67. Plaintiff requested from Defendant the reasonable accommodation for his disability of several months of unpaid leave as set forth herein.

68. Defendant intentionally failed to provide reasonable accommodations for Plaintiff's disability and demoted Plaintiff based on his disability and age.

69. Defendant was aware that Plaintiff was on medical restrictions as instructed by a health care provider on or about August 2017, and that Plaintiff had no medical restrictions after October 2017.

8

## DISABILITY

70. Plaintiff incorporates by reference herein, the allegations set forth above.

71. Defendant unlawfully and intentionally discriminated against Plaintiff by terminating his employment because of his status as a qualified individual with a disability, his history of disability, or being regarded as having a disability and failed to accommodate Plaintiff in violation of ADA. Plaintiff is entitled to recover his lost employment benefits as set forth in § 706(g) of the Civil Rights Act of 1964, which has been incorporated by reference into the ADA.

72. The Plaintiff is entitled to reinstatement of his job, back pay, interest on back pay, front pay, employment benefits including but not limited to, vacation pay, sick pay, health insurance benefits and life insurance benefits. Plaintiff's losses are in an amount greater than $10,000.00.

73. The Defendant's conduct as described above was willful, malicious, oppressive, wanton and reckless indifference to the federally protected rights of the Plaintiff herein justifying an award of punitive damages.

## AGE DISCRIMINATION

74. Plaintiff incorporates by reference the allegations set forth above.

75. Defendant terminated Plaintiff because of his age (60 years old at the time of termination) and Plaintiff was replaced by a substantially younger employee who assumed an identical job title with less experience.

76. Defendant committed unlawful and discriminatory practices in violation of the provisions of the ADEA, as amended, 29 U.S.C. § 621 *et. seq.*

9

77. Plaintiff is entitled to reinstatement to his job, back pay, interest on back pay, front pay, and employment benefits, including but not limited to, vacation pay, sick pay, health insurance benefits and life insurance benefits.

78. Plaintiff's losses are in an amount greater than $10,000.00.

79. Defendant's conduct, as described above, was willful. Accordingly, Plaintiff is entitled to recover damages under 20 U.S.C. § 621 *et. seq.*, including liquidated damages in an amount equal to the damages specified above.

80. Plaintiff is further entitled to recover reasonable attorney's fees and the costs and expenses of this action.

## WRONGFUL DISCHARGE

81. Plaintiff incorporates by reference the allegations set forth above.

82. The termination of Plaintiff from his position was in violation of the public policy of the State of North Carolina, specifically, the North Carolina Equal Employment Practices Act, ("EEPA") N.C.G.S. § 143-422.1, *et. seq.*, which makes discrimination on account of age and handicap an unlawful employment practice in North Carolina.

83. Plaintiff is entitled to reinstatement to his job, back pay, interest on his back pay, front pay, and employment benefits, including but not limited to vacation pay, sick pay, health insurance benefits, life insurance benefits, and damages for emotional distress.

84. Plaintiff's losses are in an amount greater than $10,000.00.

85. Defendant's conduct as described herein was willful, malicious, oppressive, wanton, and recklessly in disregard of Plaintiff's rights, so as to entitle Plaintiff to punitive damages under North Carolina law in an amount greater than $10,000.00.

10

86. Defendant's managers were aware of, condoned, and participated in the illegal discharge of Plaintiff so as to make Defendant liable for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands a trial by jury of all issues so triable and respectfully prays for judgment against Defendant as follows:

1. A declaration that the practices and acts complained of herein are in violation of the ADA, ADEA and EEPA.

2. An Order enjoining Defendant from engaging in discrimination on the basis of disability and age.

3. For a money judgment against Defendant for violation of ADA, ADEA and EEPA in an amount greater than $10,000.00.

4. For liquidated damages judgment against Defendant for willful violation of the ADA, ADEA and EEPA in an amount exceeding $10,000.00 and equal the amount awarded for lost employment benefits.

5. For a money judgment against Defendant for the violation of the ADA, ADEA and the EEPA representing all lost benefits of employment and compensatory damages, including but not limited to loss of wages, loss of benefits, loss of status, loss of reputation, emotional distress, inconvenience, interest, attorney fees for an amount in excess of $10,000.00, which amount shall be determined specifically at the trial of this action.

6. For a money judgement against Defendant representing punitive damages and willful liquidated damages under the ADA, ADEA, and EEPA for an amount exceeding $10,000.00, which amount shall be determined specifically at a trial of this action.

Case 5:19-cv-00149-KDB-DCK     Document 1     Filed 11/13/19     Page 11 of 13

7. For a money judgement against Defendant for wrongful discharge in violation of the EEPA, N.C.G.S. § 143-422.1, *et seq.,* representing all lost benefits of employment and compensatory damages, including but not limited to lost wages, lost employment benefits, loss of status, loss of reputation, and inconvenience, for an amount in excess of $10,000.00, which amount shall be determined specifically at a trial of this action.

8. For a money judgment representing pre-judgment interest.

9. For the costs of suit, including an award of reasonable attorney's fees pursuant to state and federal law.

10. For such other and further relief as may be just, proper, and necessary to afford complete relief to Plaintiff and to provide Plaintiff that to which he is entitled at the time this action is tried.

This is the 13th day of November, 2019.

s/  Todd J. Combs

Todd J. Combs
NC Bar No.: 23381
Combs Law, PLLC
Attorney for Plaintiff
1965 Mecklenburg Hwy
Mooresville, NC 28115
Telephone: 704-799-2662
Email: todd@combslaw.org

12

NORTH CAROLINA

IREDELL COUNTY

Brian K. Morrison  BEING FIRST DULY SWORN, DEPOSES AND SAYS:

That he is the Plaintiff in the foregoing action; that he has read the foregoing Complaint and knows the contents thereof, that the matters and things stated therein are true to the best of his knowledge, save and except those matters and things stated upon information and belief, and as to those, he believes them to be true.

This the 13 day of November, 2019.

_____

Brian K. Morrison            AFFIANT

SWORN TO AND SUBSCRIBED before me

this the 13 day of November, 2019.

_____ (SEAL)
Official Signature of Notary Public

_____
Printed or Typed Name of Notary Public

My Commission Expires: FEB. 23, 2024

JODI ZANOLINI
Notary Public, North Carolina
Mecklenburg County
My Commission Expires
--------------------